### JOHN G. PAXTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5911.   Promulgated May 25, 1927.

Assessments on stock paid by individual stockholders under the facts of this case represent additional cost of the stock and are not deductible as losses until the stock is sold or becomes worthless.

*John G. Paxton* pro se.
*J. Arthur Adams, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for 1922 in the amount of $86.54  The deficiency arises from the action of the Commissioner in disallowing as deductions two amounts of $1,000 each paid by the petitioner as assessments upon his stock in the First National Bank of Independence, Mo. The case was submitted upon the pleadings, all of the material allegations of fact in the petition being admitted in the answer.

#### FINDINGS OF FACT.

The petitioner during the year involved was a stockholder in the First National Bank of Independence, Mo.   The petitioner had been an officer of this bank since its organization.   Prior to the year involved it had made loans upon paper negotiated by a partnership known as Smith & Ricker.

Smith & Ricker, a partnership, had been for a long time dealing in cattle paper in the Kansas City stock yards.   The business and

financial standing of the partners was good. Smith was the president of the Commonwealth National Bank of Kansas City. As an adjunct to their business they obtained control of a number of banks adjacent to Kansas City. About 1907 they obtained control of the First National Bank of Independence, which had been in business since 1889. Upon getting control of the bank, Smith and Ricker permitted the former officers to remain in office. The bank greatly needed loans, and Smith and Ricker furnished the bank cattle paper negotiated by them. As the amount of this paper greatly increased the officers of the bank required the personal guarantee of Smith and Ricker for all of the loans negotiated by them. The connection seemed profitable to the bank, interest was paid promptly on the Smith and Ricker loans and the bank declared dividends of 14 per cent per annum after adding something to its surplus each year.

In December of 1921 rumors were heard affecting the standing of Smith and Ricker. On January 3, 1922, the officers of the bank learned that Smith and Ricker were insolvent. They still believed that the personal guarantee of Smith was worth something, but it soon developed that this, too, was of no value. The total liabilities of Smith and Ricker were about $12,000,000, the bank having in round numbers about one-half million of Smith and Ricker paper.

The bank's capital was $100,000, and its surplus and profits about $100,000.

The officers of the bank decided to avoid a bank failure with a consequent loss to its depositors. It was manifest on the first examination of the Smith and Ricker paper that there was a loss of $200,000. By charging off this amount the surplus and undivided profits were wiped out as well as the amount of its capital.

An assessment of $100 per share was levied upon all of the stock of the bank. The Smith and Ricker stock in the bank was held by persons who could pay no assessment, and their stock was offered without price to anyone who would pay the assessment of $100 per share.. So great was the confidence of Willian T. Kemper and other bankers of Kansas City in B. Zick, Jr., president of the bank, and its good reputation in the past, that they agreed to take the Smith and Ricker stock and pay therefor the proposed assessment of $100 per share. The other stockholders in the bank, including the petitioner, paid the assessments upon their stock. There was then charged off $200,000 of the Smith and Ricker paper.

Later in 1922 the comptroller, after a thorough examination of the condition of the bank made an order that an additional assessment of $100 per share should be paid with the alternative that if it were not paid the comptroller would close the bank. The petitioner's part of that additional assessment was $1,000, which he paid. The comptroller upon examination decided that not less than

$300,000 of the Smith and Ricker paper should be charged off as worthless.

Since the failure of Smith and Ricker in 1922 the bank has never declared a dividend and all earnings have been appropriated to additional charge-offs ordered by the comptroller of certain Smith and Ricker paper held by the bank. In 1925, for the first time, some of the stock of the First National Bank of Independence was sold at the price of $105 per share.

### OPINION.

TRAMMELL: The question involved is whether the amount of $2,000, which is the total of the two assessments made on the stock owned by the petitioner in the First National Bank of Independence, Mo., in 1922, is deductible from the gross income of the petitioner in determining his net income for that year. The petitioner contends that the amount should be deducted from his income, while the respondent contends that the amount constituted additional expenditure which must be added to the original cost of the stock and that no gain or loss resulted therefrom during 1922, since the stock was not sold during that year.

The facts in this case are very similar to the facts in the *Appeal of Harry E. Lutz*, 2 B. T. A. 484, and we think that our decision there is applicable and controlling here. The additional assessments levied upon stock in a corporation constitute additional capital outlay by the stockholders in the acquisition of their stock. No deductible loss results from the transaction until the stock is sold or is shown to have become worthless. In this case it is not shown that the stock was sold, nor is there any evidence that the stock became worthless during the taxable year involved. The likelihood that the total capital investment could never be recovered and the probability that a loss would be realized on the sale of the stock is not sufficient to warrant a deduction prior to the happening of that event.

*Judgment will be entered for the respondent.*